# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

BILLY JO GISHEY,

Plaintiff,

    v.                                   8:13-CV-1036
(LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

ARTHUR P. ANDERSON, ESQ., for Plaintiff
DANIEL R. JANES, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On January 20, 2011, plaintiff "protectively filed"[1] an applications for Supplemental Security Income ("SSI") benefits. (Administrative Transcript ("T") 23, 41-47, 73). Plaintiff alleged disability, beginning on January 10, 2011 involving, *inter alia*, bulging discs in her back, cerebrospinal fluid leak, diabetes, and depression. (T. 23, 53, 145, 160).

---

[1] The term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. If a statement meeting the requirements of the regulations is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

Plaintiff's applications were initially denied on May 2, 2011. (T. 23, 81-85). On April 20, 2012, Administrative Law Judge ("ALJ") Arthur Patane conducted a hearing, at which plaintiff testified. (T. 23, 48-72). The ALJ denied plaintiff's applications in a decision dated May 23, 2012 (T. 23-32), which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 28, 2013. (T. 1-7).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently

engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

**B.  Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

As of the date of the administrative hearing on April 20, 2012, plaintiff was 37 years old. (T. 51). She completed eleventh grade, but subsequently earned a GED. (T. 52). Plaintiff was 5'5" tall and, despite gastric bypass surgery, weighed approximately 335 pounds. (T. 879, 881, 883, 2446). Plaintiff resided with, and cared for, two stepchildren, ages 14 and 21 as of the time of the hearing. (T. 51, 56, 171-

4

72). In 2000, while employed as a customer service representative for an airline, plaintiff suffered a back injury, for which she pursued and ultimately settled a workers' compensation claim. (T. 57-58, 223-24, 630-31). She re-injured her back while working at a grocery store in 2002, and then did not work for approximately six years. (T. 58, 143, 223, 631). Plaintiff returned to work in 2009 at an ice cream shop and deli, but stopped working in January 2011, purportedly because of recurring back pain. (T. 52, 53-54, 58-59, 143, 223).

During the spring of 2011, plaintiff consulted a back specialist, Dr. Mary Flimlin (T. 919-21), and was referred to Dr. Martin Krag, an orthopedic surgeon (T. 926-28). Dr. Flimlin found plaintiff was experiencing neurogenic claudification with a right L5 radiculopathy, secondary to central and foraminal stenosis, and noted that plaintiff was becoming depressed and more immobile. (T. 920). In May 2011, plaintiff had spinal fusion surgery performed by Dr. Krag–an L4-L5 posterolateral and posterior interbody fusion with metal fixation hardware. (T. 917). Plaintiff had a successful postoperative recovery, and by July 2011, reported that her symptoms were reduced by 40%, and that her pain was decreasing from week to week. (T. 934, 945-46).[2] Plaintiff was able to increase her range of daily activities after the surgery, but still claimed to have significant postural limitations, and restrictions on her ability to walk for significant distances, sit for prolonged periods, and lift and carry heavier objects. (T. 56, 59-67, 945). In November 2011 and early 2012, plaintiff reported that

---

[2] On July 6, 2011, Dr. Marina Medved, plaintiff's primary care physician, noted that plaintiff complained of some "leaking" seven weeks following her surgery (T. 951), but the absence of subsequent notations about that issue indicate that it was resolved.

she still had quite significant chronic back pain requiring the use of medications, including hydrocodone. (T. 1628, 2446, 2470).

Plaintiff claimed, and/or was treated for, a number of conditions other than her back issues, including depression, asthma, high blood pressure, carpal tunnel syndrome which resulted in numbness in her hands, and a torn meniscus in her knee. (T. 55-56, 65-67, 873-78, 951-52, 976, 995, 1627-29, 2446). Other relevant details regarding the medical and other evidence, including the medical opinion evidence, are discussed below as necessary to address the issues raised by plaintiff.

IV.  **ALJ's DECISION**

The ALJ first determined that plaintiff had not engaged in substantial gainful activity since January 20, 2011, the date of her application. (T. 25). He found, at step two of the sequential disability analysis, that plaintiff had the "severe" impairments of degenerative disc disease of the lumbar spine and obesity. (Tr. 25). The ALJ discussed plaintiff's claims of bilateral hand numbness and depression, and concluded that these conditions did not significantly impair plaintiff's ability to complete work-related activities. (T. 25-28). At step three, the ALJ determined that plaintiff's severe impairments did not meet or medically equal the criteria of any impairment contained in the Listing of Impairments, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 28).

The ALJ next determined that plaintiff retained the RFC to perform the full range of sedentary work. (T. 28-31). The ALJ noted that sedentary work is defined as work that involves lifting no more than 10 pounds at a time, and is performed

6

primarily while sitting, although walking and standing may be required occasionally; but the ALJ did not further specify plaintiff's ability to perform the particular elements of such work. (T. 28 (citing 20 C.F.R. § 416.967(a)). The ALJ determined that plaintiff's medical impairment could be reasonably expected to cause the symptoms that she alleged, but concluded that plaintiff's subjective complaints of pain and functional limitations were not entirely credible, to the extent that they were inconsistent with the ALJ's RFC determination. (T. 29). At step four, the ALJ found that plaintiff could not perform her past relevant work, which involved light work. (T. 31).

The ALJ considered plaintiff's vocational factors of age (younger individual), ability to perform sedentary work, and high school education, and applied the corresponding Medical-Vocational Guideline (Rule) 201.27 to reach the determination that plaintiff could make an adjustment to other work existing in significant numbers in the national economy. (T. 31). Implicitly concluding that the plaintiff had no non-exertional limitations that significantly reduced her capacity for a full range of sedentary work, the ALJ did not consult a vocational expert ("VE") at step five. The ALJ ultimately concluded that plaintiff was not disabled, and denied her claim for SSI. (T. 31-32).

## V.    ISSUES IN CONTENTION

Plaintiff advances the following arguments:

(1)    The ALJ erred by failing to address the finding of plaintiff's treating physician, Dr. Medved, that plaintiff could only "occasionally" do overhead reaching and reaching in other directions. (Pl.'s Brf. at 2, 7-8, Dkt. No. 15-1).

(2)     The ALJ failed to consider whether plaintiff's asthma imposed the environmental limitations on plaintiff suggested by examining consultant, Dr. Wassef, and whether those non-exertional impairments required the ALJ to consult a VE at step five.  (Pl.'s Brf. at 2, 8-9).

(3)     The ALJ committed error by rejecting the opinions of consulting psychologist, Dr. Dubro, regarding plaintiff's limitations due to depression, in favor of the contrary opinion of treating physician, Dr. Medved.  (Pl.'s Brf. at 2, 9-10).

(4)     The ALJ failed to sustain his burden of proof, at step five, that plaintiff could perform other work, by not recognizing plaintiff's non-exertional limitations and not consulting a VE.  (Pl.'s Brf. at 2, 10-12).

For the reasons stated below, this court concludes that the ALJ did not err as plaintiff contends, or I find that any such errors were harmless.  Accordingly, I recommend that the decision of the Commissioner be affirmed and the complaint dismissed.

## VI.     LIMITATIONS ON REACHING/RFC

Plaintiff argues that, in determining that plaintiff had the RFC to do the full range of sedentary work, the ALJ erred by not discussing the finding of treating physician, Dr. Medved, in a Medical Source Statement form, that plaintiff could only "occasionally" perform overhead and other reaching.  Given that there is no other evidence in the record indicating that plaintiff was limited in her ability to reach, any error by the ALJ was harmless.

### A.     Legal Standards

#### 1.     RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining

ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."   A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ should specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  "[R]emand is not necessary merely because an explicit function-by-function analysis was not performed."  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.*

RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical

facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform a full range of "sedentary" work, which involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

## 2.    Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## 3.    Step Five Analysis

At step five of the disability analysis, the burden of proof shifts to the ALJ to

demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). In the ordinary case, the ALJ carries out this fifth step by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). But if plaintiff has non-exertional impairments, and if those non-exertional impairments "significantly limit the range of work" permitted by his exertional impairments, the ALJ may be required to consult a vocational expert ("VE"). *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

## B.    Analysis

Dr. Marina Medved completed a Medical Source Statement form regarding plaintiff's physical limitations on October 25, 2011–some five months after plaintiff's spinal fusion surgery. (T. 1056-62). Dr. Medved opined that plaintiff could lift or carry up to ten pounds occasionally, but never lift or carry more. (T. 1056). She found that plaintiff could sit, stand, or walk for only 20 to 30 minutes without interruption. Dr. Medved reported that plaintiff could sit for six hours in an eight-hour work day and could sit and stand for one hour each during a work day. (T. 1057).[3] Plaintiff's primary care physician also checked boxes on the RFC form indicating that plaintiff could only "occasionally" engage in pushing/pulling and overhead and other reaching with both hands, but could do bilateral handling and fingering "frequently." (T. 1058).

---

[3] Dr. Medved actually wrote her figures relating to plaintiff's ability to sit, stand, or walk under the "Minutes" column, not the "Hours" column, but the ALJ and plaintiffs counsel agreed that Dr. Medved meant to report hours, not minutes. (T. 30, 69; Pl.'s Brf. at 5, n.1).

The ALJ gave "great weight" to Dr. Medved's opinion that claimant could sit for six-hours during a work day and could occasionally lift and carry up to ten pounds, because those opinions were consistent with the other medical evidence and because Dr. Medved "is the [plaintiff's] treating physician and has firsthand knowledge of [plaintiff's] conditions." (T. 30). However, the ALJ found that the portion of Dr. Medved's opinion that plaintiff could only sit, stand, or walk, for 20 to 30 minutes at one time was "not consistent with the medical record as a whole" or plaintiff's admitted daily activities. (T. 30). The ALJ's opinion did not discuss Dr. Medved's conclusion that plaintiff could only engage in pushing/pulling, overhead reaching, and other reaching only occasionally (or up to one-third of the time).

Reaching is "required in almost all jobs," and a reaching limitation "may eliminate a large number of occupations a person could otherwise do." *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (citing SSR 85-15, 1985 WL 56857, at *7)). Sedentary jobs, however, "generally do not involve overhead reaching, pushing, or pulling." *Shupe v. Astrue*, No. 07 Civ. 7961, 2010 WL 3785155, at *14 (S.D.N.Y. Aug. 3, 2010); *Sova v. Colvin*, No. 7:13-CV-570 (TJM), 2014 WL 4744675, at *8 (N.D.N.Y. Sept. 23, 2014) ("sedentary work is not substantially eroded where a claimant has only overhead reaching limitations, as opposed to limitations reaching in any direction") (collecting cases).

Plaintiff argues that the ALJ erred by not specifically addressing Dr. Medved's statements regarding the limitations on plaintiff's ability to reach. However, the ALJ implicitly discounted those portions of Dr. Medved's opinion that were not consistent

with the RFC determination that plaintiff could perform the full range of sedentary work, and that were not otherwise supported by record evidence. With the exception of the boxes Dr. Medved checked on an RFC form regarding plaintiff's ability to reach, there is no evidence in the record supporting a finding that plaintiff was significantly restricted in her ability to reach. Dr. Medved's own treatment notes never reference any limitations on plaintiff's ability to reach or problems with her neck or upper extremities. In fact, Dr. Medved consistently reported "unremarkable" results of musculoskeletal examination of plaintiff's bones and joints, other than with respect to plaintiff's problems with her lumbar spine, which improved after surgery. (*See, e.g.*, T. 945, 948, 951, 955, 957, 965, 967, 972, 974, 976, 983, 987, 989-90, 991, 993, 995, 997, 2446, 2448, 2450, 2452, 2469). The only statement in the record that plaintiff made regarding her ability to reach was a notation on her function report in March 2011 that the effect of plaintiff's condition's on her ability to reach "depends on how I am reaching." (T. 176-77). Dr. Flimlin examined plaintiff in March 2011, before her spinal fusion surgery, and reported that plaintiff had unspecified limitation on pushing and/or pulling, but no "other" "postural" or "manipulative" limitations. (T. 914). Consulting examiner, Dr. Waseff reported, in April 2011, again before plaintiff's surgery, that plaintiff had a full range of motion of her shoulders, elbow, forearms, and wrists bilaterally and full strength and no abnormalities in her upper or lower extremities. (T. 882).

The ALJ arguably erred in not explicitly addressing the finding of Dr. Medved regarding plaintiff's ability to reach, and in not specifying, in his RFC determination,

what limitations, if any, plaintiff had with respect to reaching. However, given the conclusory nature of Dr. Medved's finding and the complete lack of support for that finding in her own treatment notes and in the opinions of other doctors–including another treating doctor (Dr. Flimlin)–any such error was harmless. *See, e.g.*, *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009).

The Second Circuit in *Kennedy* declined to order a remand notwithstanding the ALJ's failure to make specific findings regarding the plaintiff's ability to reach, which was frequently a requirement for the sedentary position for which Kennedy was ultimately found to be qualified. Noting that the plaintiff bears the burden of proof of residual functional capacity, the court observed that Kennedy identified no record evidence that would support a claim that she was limited in her reaching ability during the relevant time period, apart from one treating doctor's "perfunctory, post hoc notation" on a "check-off" RFC form. *Id*.

In this case, as in *Kennedy*, the ALJ generally assessed the opinion of the treating doctor under the appropriate standards, but neglected to mention the doctor's conclusory finding with respect to reaching–one of the less critical functions relating to a person's ability to perform sedentary work. To the extent the ALJ in this case erred by not more fully explaining his evaluation of the treating doctor's opinion and in not addressing plaintiff's capacity for reaching in his RFC analysis, any such error was harmless. *See, e.g., Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination); *Walzer v. Chater*, 93 Civ. 6240, 1995 WL

791963 at *9 (S.D.N.Y. Sept. 26, 1995) (finding that ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome).

In *Selian v. Astrue*, 708 F.3d at 412, 416, 422, the Second Circuit held that an ALJ, who determined that plaintiff could only "occasionally push, pull, and reach in all directions," erred at step five "in failing to determine whether [plaintiff's] reaching limitation was non-negligible, which would preclude reliance on the Guidelines and require the testimony of a vocational expert."  In this case, however, unlike *Selian*, the ALJ did not adopt any limitation with respect to reaching for the plaintiff; so the ALJ was not required,  at step five, to evaluate whether such a limitation would have significantly eroded the plaintiff's capacity for a full range of sedentary work.

## VII.  NON-EXERTIONAL IMPAIRMENT/ASTHMA

Plaintiff argues that the ALJ erred, in his RFC analysis, by failing to consider environmental limitations, related to plaintiff's asthma, that would significantly limit her ability to perform sedentary work.  The medical records confirm that plaintiff was treated for asthma, and the opinions of one treating doctor and one consulting doctor suggest some environmental restrictions on plaintiff's ability to work.  However, the plaintiff did not list asthma as a disabling condition in her initial disability report.  (T. 160).  In any event, even if the ALJ's failure to address the medical opinions or to consider adding environmental limitations to his RFC determination was error, it was harmless.  The environmental restrictions suggested by Dr. Wassef and Dr. Medved would not significantly erode plaintiff's ability to perform sedentary work, and would

not undermine the ALJ's determination at step five, without the input of a vocational expert, that plaintiff could perform sedentary work.

Dr. Wassef's April 2011 report noted that plaintiff "states that she experiences asthma attacks if she has a common cold and it can also be affected by seasonal changes." (T. 879). Dr. Wassef's examination of plaintiff's chest and lungs revealed no abnormalities or issues. (T. 882). As a result of this single examination, Dr. Wassef concluded that plaintiff "should not be exposed to **extremes** of temperature, second-hand smoke, perfumes, chemicals, or any type of respiratory irritant." (T. 883) (emphasis added).

Plaintiff's counsel points out that Dr. Medved frequently prescribed plaintiff inhalers, such as Singulair, typically used to treat asthma. (Pl.'s Brf. at 5, 9 (citing T. 951, 952, 995, 2446); see also T. 926 (Dr. Krag includes asthma among plaintiff's "other medical problems")). However, with one exception when plaintiff had a chest cold, Dr. Medved's treatment records routinely indicated that plaintiff had normal chest examinations and clear lungs. (T. 945, 951, 955, 965, 972, 976, 983, 987, 991, 995, 2446 (plaintiff complained of chest cold), 2450, 2469). Dr. Medved's Medical Source statement opined that plaintiff could "Occasionally (up to 1/3)" be exposed to dust, odors, fumes, and pulmonary irritants" but should "never" be exposed to extreme cold or heat. (T. 1060).

A "plaintiff's need to avoid concentrated exposure to respiratory irritants has only a minimal impact on her ability to perform sedentary work." *Rafferty v. Colvin*, No. 3:12-CV-1554 (DNH), 2014 WL 1875339, at *11 (N.D.N.Y. May 9, 2014)

(plaintiff's non-exertional impairments, including the need to avoid respiratory

irritants, does not significantly diminish her ability to work; therefore, it was not error

for the ALJ to rely on the Grids at step five, and not produce a vocational expert);

*Donaldson v. Colvin*, No. 12-CV-528S, 2013 WL 5943925, at *5 (W.D.N.Y. Nov. 5,

2013) ("[t]he non-exertional limitation that [plaintiff] should avoid 'high

concentrations of dusts, fumes, gases, and odors' does not significantly erode the

occupational base of sedentary work, and therefore does not trigger the duty to obtain

testimony from a vocational expert"); *Garcia v. Astrue*, No. 10-CV-3950, 2011 WL

6034466, at *3 (E.D.N.Y. Dec. 5, 2011) (the "avoidance of dust and temperature

extremes" non-exertional limitation did not obligate the ALJ to consider vocational

expert testimony at step five because this restriction would not preclude plaintiff from

taking on most sedentary work); SSR 85-15, 1985 WL 56857, at *8 ("Where a person

has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on

the broad world of work would be minimal because most job environments do not

involve great noise, amounts of dust, etc."). Even if the ALJ had considered and

adopted the environmental limitations contemplated by Dr. Wassef and Dr. Medved, it

would not have altered his analysis at step five and his conclusion, based solely on the

Grids, that plaintiff could perform other, sedentary work. Hence, any error arising

from the ALJ's failure to explicitly address these environmental limitations in

assessing plaintiff's RFC was harmless. *See, e.g., Sayles v. Colvin*, No. 13cv6129,

2014 WL 4384133, at *18 (S.D.N.Y. Aug. 28, 2014) (to the extent the ALJ failed to

address plaintiff's ability to tolerate exposure to humidity, wetness, or extreme

temperatures, those oversights amount to harmless error, because such limitations would not significantly erode the occupation base for sedentary work) (Rep't-Rec.), *adopted*, 2014 WL 4631202 (S.D.N.Y. Sept, 16, 2014); *Duvergel v. Apfel*, No. 99 Civ. 4614, 2000 WL 328593, at *11 & n. 29 (S.D.N.Y. Mar. 29, 2000) (because there is no evidence of record that plaintiff's gastrointestinal problems were disabling, any oversight on the ALJ in addressing those particular medical problems was harmless error not warranting a remand).

## VIII. <u>REJECTION OF THE CONSULTING PSYCHOLOGIST'S OPINION</u>

As noted, the ALJ expressly determined, at step two of the disability analysis, that plaintiff's depression was not a "severe" impairment and did not significantly impact her ability to do basic work activities. (T. 25-28). Plaintiff argues that the ALJ erred in rejecting the opinion of consulting psychologist, Dr. Dubro, that plaintiff had marked restrictions in various job-relation functions as a result of her depression. This court finds that the ALJ properly determined that plaintiff's depression was not a "severe" impairment, because substantial evidence supports the ALJ's decision to give greater weight to the opinion of treating physician, Dr. Medved, that plaintiff had no significant job-related restrictions resulting from depression.

Consultative examiner, Alan Dubro, Ph.D., evaluated the plaintiff in April 2011, just prior to her spinal fusion surgery. The plaintiff reported that she has taken antidepressant medication starting 2005, when she separated from her husband. (T. 873). She related symptoms of depression including loss of interest, social withdrawal, concentration difficulties, sleep difficulties, and irritability. (T. 874). Dr.

18

Dubro related that, over the past year, claimant's attention span and concentration had been markedly impaired, and she had displayed marked difficulty in performing daily tasks independently and on a regular basis, and in interacting with others. (T. 876-77).

Upon examination by Dr. Dubro, the plaintiff's mood was depressed, and her affect was blunted. Her thought processes were coherent and goal directed. (T. 875). Dr. Dubro reported that the plaintiff's attention, concentration, and memory were markedly impaired based on her depressed mood, along with distractibility associated with physical discomfort. (T. 875-76). Plaintiff, when tested, was not able to perform more complicated arithmetic calculations, such as making change from $1 when multiplication was involved. (T. 876). The plaintiff's cognitive functioning was estimated to fall in the low average range, and her insight and judgment were deemed good. (T. 876).

Dr. Dubro reported that the plaintiff could understand instructions, but she displayed moderate difficulty in her ability to attend, remember, and follow directions and instructions. (T. 876). He opined that she would experience marked difficulty in learning new tasks, regularly attending to a routine, and maintaining a schedule. (T. 876-77). However, Dr. Dubro found the plaintiff was able to make appropriate decisions. (T. 877).

The ALJ extensively considered Dr. Dubro's opinions and concluded they were entitled to "little weight," noting that the doctor had examined the plaintiff only once. (T. 26-27). The ALJ observed that Dr. Dubro apparently relied quite heavily on the plaintiff's subjective statements about her symptoms and limitations, many of which

were inconsistent with plaintiff's admitted daily activities. (T. 26). For example, while Dr. Dubro observed that plaintiff had "marked" difficulty interacting with others, plaintiff elsewhere reported interacting with her children and local relatives, attending her children's school events, and attending social functions such as Moose Club meetings. Plaintiff had also previously denied any difficulties interacting with supervisors, co-workers, and the public. (T. 26, 27, 56-57, 62, 172, 176, 179, 874, 877). Dr. Dubro opined that plaintiff had marked difficulties in maintaining the concentration to perform daily tasks. However, on other occasions, plaintiff acknowledged that she was able, on a regular basis (with some limitations due to back pain), to care for herself and her children, drive her children to school and various activities, cook, clean, and shop. (T. 26-27, 56-57, 62, 65-66, 172-76, 178, 874, 876-77). While Dr. Dubro found that plaintiff had difficulty with arithmetic and would need help managing money, she previously stated that she was able to pay bills, count change, and handle a savings account, and that her medical conditions had not affected her abilities to handle money. (T. 175, 875-76, 877).

The ALJ assigned greater weight to the opinions of Dr. Medved, the primary care physician who had a long history of treating plaintiff for, *inter alia*, depression. (T. 26). Dr. Medved reported, in October 2011, well after plaintiff's back surgery, that she had no mental-health-related limitations on her ability to perform job functions. (T. 1053-55). That opinion is consistent with Dr. Medved's treatment notes indicating that, throughout 2011 and early 2012, plaintiff's depression, was successfully managed by medication with Zoloft. (T. 945, 946, 948 (noting Zoloft as

medication and reporting appropriate mood and affect and "none" with respect to depression), 951, 954, 955, 958, 965, 968, 972, 975, 976, 983, 987, 990, 991, 994, 995, 996, 997-98, 2446, 2448, 2450, 2452, 2469).[4]  The ALJ also explained, in considerable detail, why he concluded that plaintiff's daily activities were more consistent with Dr. Medved's findings than with Dr. Dubro's findings.  (T. 26-27).

It is "well settled" that an ALJ is entitled to rely upon the opinions of examining state agency medical consultants, who are deemed to be qualified experts in the field of social security disability, particularly where the opinions are supported by the weight of the evidence.  *See, e.g., Wright v. Colvin*, No. 5:12-CV-440 (MAD/VEB), 2013 WL 3777187, at *18 (N.D.N.Y. July 17, 2013); 20 C.F.R. §§ 416.912(b)(8), 416.913(c), & 416.927(e)(2).  However, "[t]here is no requirement that [an ALJ] accept the opinion of a consultative examiner concerning a claimant's limitations," particularly when that opinion is not supported by substantial evidence.  *Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013).  Here, the ALJ fully considered the opinions of the consultant, Dr. Dubro, and explained, in considerable detail, why the ALJ found that the contrary opinions of treating physician, Dr. Medved were entitled to greater weight.  The ALJ's decision that plaintiff's ability to perform sedentary work was not limited by her depression was supported by substantial evidence, and was not error.

---

[4] The only medical evidence that plaintiff displayed poorly controlled symptoms of depression, other than Dr. Wassef's report, related to the period just prior to plaintiff's back surgery, which substantially relieved her back pain and related physical symptoms.  (*See, e.g.*, T. 920 (Dr. Flimlin reporting that plaintiff had a depressed affect and was tearful upon examination on March 25, 2011).  These temporary mental health symptoms do not undermine Dr. Medved's findings in October 2011, after plaintiff's surgery.

## IX.  STEP FIVE DETERMINATION

As noted above, if a claimant has non-exertional impairments that "significantly limit the range of work" otherwise permitted by her exertional impairments, the ALJ may be required to consult a vocational expert in determining whether there are other jobs in the national economy that the claimant can perform.  The plaintiff contends that the ALJ erred, at step five, by improperly relying solely on the Grids, when plaintiff's purported non-exertional limitations required consultation with a vocational expert.

As discussed in section VI B, above, the ALJ's implicit conclusion–that there was no basis in the medical or other evidence supporting Dr. Medved's conclusory finding that plaintiff was significantly limited in her ability to reach–was supported by substantial evidence.  Similarly, as outlined in section VIII, substantial evidence also supported the ALJ's explicit finding that plaintiff's ability to perform job-related functions was not significantly limited by her depression or any other mental health impairment.[5]  Accordingly, the ALJ was not required to further evaluate these purported limitations at step five or to consult with a VE.  *See Zabala v. Astrue*, 595 F.3d at 411 ("[t]he ALJ found that Petitioner's mental condition did not limit her

---

[5] If the ALJ had concluded that plaintiff had mental-health-related impairments that limited her RFC to unskilled or simple sedentary work, that would not have required consultation with a VE at step five.  *See, e.g., Madonia v. Astrue*, No. 09-CV-552 (NAM), 2011 WL 2470482, at * 8 (N.D.N.Y. June 2, 2011) ("[B]ecause Plaintiff was found capable of performing unskilled work, the ALJ was not obligated to obtain testimony from a VE"); *Sesa v. Colvin*, No. 13-CV-2670, 2014 WL 3858404, at *14 (S.D.N.Y. Aug. 6, 2014) (the ALJ did not err in finding that plaintiff was not disabled at step five, without consulting a vocational expert, based on an RFC determination that plaintiff could perform unskilled sedentary work, because plaintiff's limitations did not significantly narrow the range of sedentary work she could perform).

ability to perform unskilled work"; [t]hus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the [Grids at step five] was permissible"). Finally, as discussed in section VII above, even if the ALJ erred by failing to consider including environmental limitations in his RFC determination, any such error would be harmless. Based on the authority set forth above, the environmental limitations suggested in the medical opinions in this case would not significantly erode plaintiff's occupational base for sedentary work, and so a VE would not be required at step five even if plaintiff had such limitations.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed, and the plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated**: February 23, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge